[Civ. Nos. 5073, 5074. Fourth Dist. Nov. 4, 1955.]

ALLEEN S. MILDREN, Appellant, v. PAUL MILDREN et al., Respondents.

(Two Cases.)

Taylor F. Peterson for Appellant.

Robert McWilliams for Respondents.

GRIFFIN, J.—Alleen obtained an interlocutory decree of divorce from Paul on the ground of extreme cruelty on April 8, 1953. The main issue presented by defendants' cross-complaint was the question of the nature, character,

and title of their home property and its furnishings, in Fontana, on September 20, 1950, the date of separation of the parties. Alleen was awarded the home, together with certain other described personal property, as her sole and separate property, in accordance with the provisions of some previous property settlement agreement entered into by them on or about January 28, 1948. At the trial Paul was given other property and each was ordered to deliver over possession of it accordingly.

On May 13, 1953, Alleen commenced an action in claim and delivery against Paul and his mother, Jessie Mildren, for possession of certain itemized furniture and furnishings, alleging that their value was $12,500. Damages, in case delivery was not made, were also sought. Jessie answered, denied she was wrongfully or otherwise in possession of them and claimed that certain described items on the list belonged to her, denied that Alleen was the owner of any of them, and alleged that plaintiff was not entitled to possession of them. She also denied that Alleen ever demanded possession of them from her or that she was damaged in any sum.

Paul alleged he was the owner of certain of the articles named and admitted certain allegations of plaintiff's complaint in respect to other items. He alleged that the parties still were husband and wife when the claim and delivery action was filed and claimed that the interlocutory decree was a binding adjudication as to their property rights and as to all issues raised by plaintiff's complaint, the answers thereto, and defendants' cross-complaint.

After trial of the issues, the court specifically found that Paul took some of the articles listed by Alleen as belonging to her, but that he had returned everything but a "deep freezer"; that before the trial of the divorce action he sold the freezer for $75 and never accounted for it; that Jessie took certain of the items listed but these articles belonged to her and not to plaintiff; that all other remaining articles listed were owned by plaintiff on September 20, 1950, and were then in her possession or had been destroyed or were taken by others than these defendants through no fault of theirs. Judgment was entered on May 7, 1954, in favor of defendants.

On May 27, 1953, Alleen filed another action against these defendants for forcible detainer, for waste, and for value of the use and occupation of the home and real property involved, alleging that she was entitled to the possession

thereof on September 20, 1950, the date of the separation; that defendants peaceably, but without right, took possession of the same and occupied it until February, 1953, by virtue of threats, etc.; that the reasonable rental value thereof was $250 per month; that during this period defendants allowed 4½ acres of citrus trees to die for lack of water, to her detriment in the sum of $10,000. As a separate cause of action she alleged defendants vacated possession on February 1, 1953, and during the period from the date of separation to February 1, 1953, they committed waste thereon in the sum of $10,000. Defendants separately denied generally these allegations. Paul alleged that on September 20, 1950, this was their marital home; that they were then living together with their minor son Donald in said home; that Alleen voluntarily left it and he continued to live in it with the boy and the boy's grandmother Jessie, who cared for him and the home until February 1, 1953; that no final decree of divorce was ever obtained; that since September 20, 1950, Alleen caused an action to be brought against him in which she made an application for an order requiring him to surrender possession of the property to her; that the application was denied, and no appeal was taken from that order. He claims that this order became final and now constitutes a final binding adjudication of that issue; that on April 9, 1953, an interlocutory decree of divorce was entered setting forth the respective rights of these parties in and to the property involved and that it became final; and claims that the use and occupation of the property, from the date of the separation until the trial of the divorce action was taken into consideration in making disposition of the property in the interlocutory decree.

The court found generally in favor of the defendants and that Alleen voluntarily left the home on September 20, 1950; that Paul maintained it and brought his mother in to care for the minor child and the home and that her occupancy was only as a member of the family; that Paul permitted certain orange trees to die for lack of water but that plaintiff was not damaged to the extent indicated by her, and any claimed damage became res judicata by reason of the interlocutory decree which finally and subsequently adjudicated their property rights. Judgment was entered on July 16, 1954, for defendants. These two actions were consolidated for the purpose of trial and on appeal.

Without setting forth in detail the contradictory evidence

pertaining to the title and claimed ownership of the furniture and furnishings of the home and of the property, and the claimed damage to it, we will give a résumé of the several claims. After 25 years of married life Alleen and Paul came to unhappy differences and Paul, under the provisions of the property settlement agreement, deeded the home property and assigned his interest in the community furnishings which they then owned, to Alleen, as part of that settlement on January 28, 1948, but the parties continued to live on the premises with their two boys, Donald and Paul, Jr., until September, 1950, at which time Alleen voluntarily left the home. Paul, Sr., and Jessie, his mother, remained on the property and occupied it. Alleen subsequently commenced her action for divorce and Paul contested it, claiming that the property listed by Alleen as her sole and separate property was community property, or property belonging to his mother, himself or others, and asked the court to make a determination of this issue. Paul, his mother and his minor son Donald continued to remain on the property and occupied it until the latter part of January, 1953, or the first part of February, 1953, at which time Paul and his mother moved out, shut off the gas, lights, locked up the house, and told Paul's attorney to notify Alleen's attorney about his removal. Donald returned to live with his mother. During the time Paul and Jessie occupied the premises considerable of the furnishings were removed by them. They claimed it belonged to them. On April 8, 1953, the interlocutory decree of divorce was entered, as heretofore indicated. After Paul and Jessie removed from the premises, apparently Paul, Jr., then about 24 years of age, remained on the premises and slept in the shed. He had no key to the home.

At the trial of these actions Alleen had a prepared list of property which she claimed was in the home at the time she left. She admitted some of this had been returned to her by Paul. She testified that considerable portions of it had been removed from the house and that which remained in the home had been damaged to a great extent. There is a conflict in the evidence as to when this loss and damage occurred. It affirmatively appears that after Paul, Sr., and his mother left the home Paul, Jr., found a way to enter the house, and held numerous parties, which included as guests many women of questionable character, for a period of some time thereafter. Portions of the furnishings were destroyed or were taken during this period. The police were called

on one occasion and Paul, Jr., was taken to jail. About this time, on February 11, 1953, Alleen came back to the home and occupied the house. She said for some time thereafter men called and inquired for certain girls. The claim of ownership of the furniture by Alleen is that Jessie gave them a considerable portion of it when they were married and during their married life and that they bought some of it from her. Jessie and Paul denied this and said it was only loaned to them by Jessie. The trial court found in favor of defendants on this issue and found in their favor as to the title of the property taken by defendants from the premises. There is sufficient evidence to support that finding and the further finding that the other missing articles were taken by others, unknown to defendants and that the damage to the remaining furniture was through no fault of defendants.

■ The court also found that Paul, Sr., disposed of a refrigerator for $75 prior to the divorce trial and did not account to plaintiff for the proceeds. In failing to give a judgment to plaintiff for this amount apparently the court felt that this item was one of the issues that was or should have been determined in the divorce action when their property rights were in issue and were determined. It properly held that the interlocutory decree was res judicata as to this claim. (*Lang* v. *Lang*, 182 Cal. 765 [190 P. 181].)

■ As to the claim that defendants were liable for the use and occupancy of the property from the date of separation until February, 1953, and for claimed waste in reference to the lack of care of it and the orange grove, there is sufficient evidence to support the trial court's finding in favor of the defendants. From the evidence it does appear that the grove never did operate as a net gain of any import. In most years it was otherwise. There was evidence that the surrounding community grew up with residences and was near certain smog drifts from the Kaiser Steel Mill which it is claimed affected production in the orange grove. It was further shown that Dr. Paul Mildren was then retired on disability insurance, was not able to care for the grove, and was advised by experts that it would not be profitable to further cultivate it. It was further shown that its value had greatly increased for subdivision purposes. There was evidence that the parties owned certain shares of water rights in connection with the property; that plaintiff allowed these shares to become subject to sale by delinquency in payments

for water; that they were sold by reason thereof; and that Paul purchased them under the sale and resold them for about $150. No water was furnished to the premises thereafter. Plaintiff claims damages by reason of this claimed neglect, which she said occurred subsequent to her separation from Paul and prior to the trial of the divorce action.

In this respect the trial court here found, not only that this claim was barred by the interlocutory judgment in the divorce action under the doctrine of res judicata, but it also found that by virtue of the trees dying from lack of water plaintiff suffered no damage. Regardless of the question of the application of the doctrine of res judicata, the evidence supports the finding that plaintiff suffered no damage by reason of any claimed negligence of defendants from lack of water or cultivation. The evidence shows that on nearby property orange trees were being torn out and the property was being subdivided for homes at greatly increased prices.

Since the question of the effect and validity of the claimed property settlement agreement and the deed of the property here in question was being tested in the divorce action, pending the trial of said action, defendants would not be liable for rental of the premises to plaintiff in an independent action such as the one here under consideration, particularly where the court found that plaintiff voluntarily left the premises after living with her husband thereon for several years after the claimed execution of the property settlement agreement, and particularly when there was no agreement to pay rent, nor any unauthorized holding or retention of the premises after the separation and prior to the trial of the divorce action involving and declaring their respective rights and obligations to each other. The court specifically found, upon sufficient evidence, that Jessie occupied the property only as a member of the family of defendant Paul Mildren, and not on her own account. The findings and judgments rendered in each action as to each defendant are sufficiently supported by the evidence.

Judgments affirmed.

Barnard, P. J., and Mussell, J., concurred.